## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

Marie Assa'ad-Faltas, MD, MPH, for herself and *qui tam* and *Ex Rel* the Government of the Arab Republic of Eygpt (Egypt), and as founder and first member of Doctors Against Drunk Drivers ("DADD"); Orthodox Christians Against Executions ("OCAE"); Sojourners Against Xenophobia ("SAX"); Immigrants Against Dishonest Judges ("IADJ"); Pacifists Against Random Killings (PARK) and Sensible People Against Mindless Incarcerations ("SPAMI"),

                    Plaintiff,

vs.

State of South Carolina (SC); Nimrata R. Haley as SC's Governor, Alan Wilson, as SC's Attorney General; Glenn McConnel, as SC's Lieutenant Governor; John Courson, as President *pro tempore* of SC's Senate; SC's General Assembly; SCs Judicial Merit Selection Commission (JMSC); Jean Toal, as administrative head of all SC's state courts; Daniel Shearouse, as Clerk of SC's Supreme Court; Tanya Gee and V. Claire Allen, as Clerk and Deputy Clerk of SC's Court of Appeals; Mark Keel, as Chief of SC's State Law Enforcement Division (SLED); LeRoy Smith, as Head of SC's Department of Public Safety; Leon Lott, as Sheriff of Richland County SC, and Warden of the Alvin S. Glenn Detention Center (ASGDC); Gafford Thomas Cooper, Jr., as SC's Fifth Judicial Circuit's Administrative Judge for General Sessions; Daniel Johnson, as SC's Fifth Judicial Circuit's Solicitor; Gary Watts, as Coroner for Richland County, SC; Jeanette McBride as Richland County's Clerk of Court; Leslie Coggiola, as SC's Disciplinary Counsel; Roslynn Frierson, as Director of SC's Office of Court Administration; William Nettles, as U.S. Attorney for the District of South Carolina (D.S.C.); Steven Benjamin, as Mayor and all members

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C/A No. 3:12-1786-TLW-SVH

REPORT AND
RECOMMENDATION

of the City of Columbia ("the City") Council; Steve )
Gantt, manager for the City; Dana Turner, falsely )
bearing a title of Chief Administrative Judge of the )
City's Municipal Court (CMC); Randy Scott, falsely )
bearing a title of the City's Chief of Police; Marion )
Hanna, falsely bearing the title of CMC judge; Ken )
Gaines, Robert G. Cooper, Dana M. Thye, and David )
A. Fernandez, supposed attorneys for the City; and all )
of their subordinates who intend to injure Plaintiff; all )
solely officially and solely for injunctive and *qui tam* )
recovery, )
)
                        Defendants. )
_____ )

      Plaintiff Marie Assa'ad-Faltas ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action seeking "injunctive and *qui tam* relief." [Entry #1 at 1; Entry #10 at 1]. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the undersigned is authorized to review such complaints or petitions for relief and submit findings and recommendations to the district judge. For the reasons that follow, the undersigned recommends that the district judge dismiss this case without prejudice and without service of process.

I.     Factual and Procedural Background

      Plaintiff filed a complaint in this case on June 28, 2012, and an amended complaint on June 29, 2012. [Entry #1, 10]. The undersigned issued an order on August 7, 2012 directing Plaintiff to provide the financial documents necessary to bring this case into proper form for initial review. [Entry #18]. Plaintiff complied with the order. [Entry #2-1].

Plaintiff has also filed motions to designate a judge or "Three-Judge Panel from outside South Carolina" to hear this case and to unseal this action.[1]  [Entry #14, #33].

Plaintiff, who alleges federal jurisdiction under the United States Constitution and the "Voting Rights Act of 1965, 42 U.S.C. § 1973c(a)," states that she is a "Coptic Orthodox Christian Egyptian citizen who, from July 1973 to May 2011, carried an unbroken series of Egyptian passports belonging to the Egyptian Government . . . ."  [Entry #10 at ¶¶ 1, 2].[2] Plaintiff has "been an alien lawfully admitted for permanent residence in the U.S." since September 2003.  *Id.* at ¶ 2.  She became eligible to apply for citizenship in the United States on September 13, 2009, but allegedly "suffered extreme, irreparable damages to her person and intellectual property from official defendants' failure to enforce *existing* federal and state laws against discrimination" and from the defendants' receipt and alleged misdirection, or indiscriminate use of, federal funds.  *Id.* at ¶ 18 (emphasis in original).

The amended complaint also claims that South Carolina "substantially changed its elections of state judges *without* obtaining pre-clearance" in 1996 causing "discrimination against [Plaintiff's] race" and injuring her "*concretely.*"  *Id.* at ¶ 4 (emphasis in original). Plaintiff states that she has testified and presented evidence against "unworthy judicial candidates," including defendant Marion Hanna, a City Municipal Court Judge, to defendant

---

[1] Plaintiff's motions to unseal the case [Entry #14, #33] are granted in a separately-docketed order.  Plaintiff's motion to designate a three-judge panel [Entry #14] is recommended for dismissal herein.

[2] Plaintiff attempts to incorporate "by reference all her complaints, exhibits, and submission[s]" filed in any federal or state court.  [Entry #10 at ¶ 3].

South Carolina's Judicial Merit Selection Commission ("JMSC"), but was ignored. *Id.* at ¶ 5. The amended pleading further alleges that, in May 2011, defendant Hanna confiscated Plaintiff's expired passport to "force [Plaintiff] to violate Egyptian law" and removed fingerprints of persons who allegedly stole the passport, "but later replaced it after [Plaintiff's] false arrest in her home by the City on 2 December 2009."[3] *Id.* at ¶ 6. Plaintiff indicates that she "opened an investigation on Hanna" with defendant Leslie Coggiola, South Carolina's Office of Disciplinary Counsel ("ODC"), however, defendant Coggiola did not inform Plaintiff of defendant Hanna's response or the result of the investigation. *Id.*

Plaintiff also complains that defendant Coggiola "serves at the pleasure of SC's Supreme Court, and more specifically at the pleasure of Defendant Toal." *Id.* at ¶ 8. Because any "complaint against Toal is judged by Toal's subordinates," Plaintiff alleges that the "foundation of Due Process" is violated and "a panel from outside South Carolina" [should] investigate [Plaintiff's] various ethical complaints against Toal." *Id.* The amended complaint discusses ethical complaints Plaintiff filed against defendant Toal including alleged "dereliction of her administrative duties and financial mismanagement of South Carolina's judicial department, of which she is head." *Id.* Plaintiff claims that, after she submitted a brief in a state court action, "pointing out that Defendant Turner is illegally

---

[3] Plaintiff alleges that she was "falsely arrested on two counts of harassment 'in the first degree,'" which were remanded to the City of Columbia Municipal Court and reduced to harassment "in the second degree" after a February 2010 jury declared a mistrial in the Richland County Court of General Sessions. [Entry #10 at n.4].

occupying dual positions as a judge and clerk" of the same City Municipal Court, Defendant

Toal allegedly, "in corrupt motives to discredit [Plaintiff] and prevent her from questioning

whether Toal too was illegally acting as a judge and budget director of SC's Judicial

Department," directed South Carolina "state court clerks to not accept any submission of

behalf of [Plaintiff] unless prepared by a lawyer." *Id.* at ¶ 10. The amended complaint

claims that defendant Toal's order requiring Plaintiff's representation by an attorney leaves

Plaintiff "helpless if a *frivolous* criminal or civil case is filed *against her* in SC state or

municipal courts." *Id.* at ¶ 17 (emphasis in original). Plaintiff also claims that she has "need

to file a complaint in SC's Supreme Court's original jurisdiction" regarding South Carolina's

immigration law, and needs the ability to "seek rehearing *pro se* and to seek vacation of" an

order issued by the South Carolina Court of Appeals in one of Plaintiff's state court actions.[4]

*Id.* at ¶¶ 22, 24.

Next, Plaintiff alleges that members of defendant South Carolina's General Assembly

and defendant Toal have taken an oath or affirmation, mandated by "Article VI, Section 1,

Clause 3, of the U.S. Constitution" with mental reservation to violate it. *Id.* at ¶¶ 25, 26.

Thus, Plaintiff claims that legislators were not "properly installed when they passed SC's Act

---

[4] The amended complaint cites cases in which Plaintiff filed motions to intervene in two pending cases challenging South Carolina's comprehensive immigration law, Act No. 69. [Entry #10 at ¶ 19]. Plaintiff's motions were denied in both cases. *See United States of America v. State of South Carolina, et al.*, C/A No. 2:11-02958-RMG (D.S.C. filed Oct. 31, 2011); *Lowcountry Immigration Coalition, et al. v. Nikki Haley, et al.*, C/A No. 2:11-02779-RMG (D.S.C. filed Oct. 12, 2011).

69 and the entire act is invalid." *Id.* at ¶ 25. Defendant Toal's violation of the oath is allegedly "evidenced by the *'nil ultra'* logo on SC's Supreme Court stationary [which] violates the federal constitution in failing to recognize that the U.S. Supreme Court is higher than SC's Supreme Court" and constitutes "state establishment of a religion with Toal as the ultimate goddess." *Id.* at ¶¶ 26, 27. Plaintiff also challenges South Carolina's "'Home Rule' Act [which] *in effect* creates 46 or more new states within South Carolina under names of counties and other municipalities and unconstitutionally endows them with power to legislate which is reserved only to the states themselves . . . by the Tenth Amendment." *Id.* at ¶ 31 (emphasis in original). Plaintiff alleges that she "suffered the effects of 'Home Rule' in that it allowed Richland County and the City of Columbia to falsely arrest her with impunity and apply to her unconstitutional ordinances." *Id.* at ¶ 32.

Plaintiff names defendant William Nettles, Unites States Attorney for the District of South Carolina, for allegedly threatening "to arrest [Plaintiff] for no reason" and for yelling at "her to leave his office when she timely went there for an appointment . . . on 8 March 2011." *Id.* at ¶ 37. Plaintiff sues defendant Dana Turner, Chief Administrative Judge of the City of Columbia Municipal Court, for allegedly falsifying court records or ordering her subordinates to do so, and defendant Gafford Thomas Cooper, Jr., Administrative Judge for the Fifth Judicial Circuit, for refusing to schedule Plaintiff's "motion for freedom to travel under false pretense." *Id.* at ¶¶ 40, 42. Lastly, Plaintiff complains of conditions at the Alvin S. Glenn Detention Center ("ASGDC") and claims that the ASDGC "denied her good time

credits even though she had no disciplinary infractions." *Id.* at ¶ 45. Liberally construed, this claim appears to relate to Leon Lott as Sheriff of Richland County and Warden of the ASGDC.

As relief, Plaintiff asks the court to declare: (1) "the establishment of SC's JMSC a substantial change to SC's election system which was not pre-cleared . . . as required by § 5 of the Voting Rights Act of 1965"; (2) the current General Assembly improperly seated; (3) all laws and acts of the current General Assembly null and void; (4) all provisions of the South Carolina Constitution allowing defendant Toal to perform "extensive and unquestionably executive functions (not incidental to her judicial role)" violative of the separation of powers and of the "U.S. Constitution's Guarantee Clause"; and (5) "SC's 'Home Rule' Act unconstitutional." *Id.* at 6, ¶¶ 1–5. Plaintiff also asks this court to prohibit all state and local government powers "from ever taking anyone's passport again," *id.* at ¶ 9, and "SC's state courts from imposing on [Plaintiff] requirements that are illegally" based on her "alienage and national origin." *Id.* at 7, ¶ 17. The amended complaint seeks to compel numerous actions by state officials and entities to include: (1) creation of one unified court for petty offense/small claim trials under executive control of the Governor and overseen by the State's Legislature, and creation of a separate system for the issuance of arrest and search warrants by defendants Haley and Toal; (2) disposal of the "nil ultra" logo by the South Carolina Supreme Court; (3) return of Plaintiff's passport by the City of Columbia Municipal Court; (4) release by defendant Coggiola of "all complaints by Plaintiff

and the investigations thereof"; (5) submission by the "City defendants"of Defendants Keel and Johnson's financial records for the past ten years regarding external audits and prosecutions for financial wrong-doing; (6) release of information from local murder investigations by defendant Watts; (7) investigation of "drunk-driving acquittals in CMC" by defendants Keel, Johnson, and Smith; (8) cessation of Plaintiff's harassment by "the City Attorney defendants"; and (9) release of information regarding Plaintiff's "FOIA requests" from the "City and Solicitor Defendants." *Id.* at 6, ¶¶ 6, 7, 8, 10, 12, 13, 14, 15, 16. Finally, Plaintiff asks this court to order defendant Nettles to refer reports filed by Plaintiff to another United States Attorney, *id.* at ¶ 11, and for any other relief deemed just and proper. *Id.* at ¶ 18.

## II. Discussion

### A. Standard of Review

Plaintiff filed her complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action fails to state a claim on which relief may be granted or is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A

claim based on a meritless legal theory may be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B).  *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  A federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975).  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

B.    Analysis

The amended complaint alleges violations of the Voting Rights Act of 1965, 42 U.S.C. § 1973, *et seq.*, and violations of the United States Constitution by the State of South Carolina, its officials and entities.  [Entry #10, caption].  Plaintiff also names one federal official, William Nettles, as a defendant in this action. *Id.*  Plaintiff's constitutional claims are analyzed under 42 U.S.C. § 1983, which allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte*

*Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). Plaintiff's claim against the sole federal defendant is construed as a claim brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), which established a direct cause of action under the United States Constitution against federal officials for the violation of federal constitutional rights.[5]

1. Voting Rights Act

Congress enacted the Voting Rights Act in 1965 to "rid the country of racial discrimination in voting." *State of South Carolina v. Katzenbach*, 383 U.S. 301, 315 (1966). "Aggrieved persons," whose voting rights have been denied or impaired have standing to bring suit under the Voting Rights Act. *See* 42 U.S.C. § 1973a. Plaintiff alleges that she is an Egyptian national, lawfully admitted for permanent residence in the United States. [Entry #10 at ¶ 2]. The amended complaint further claims that changes in South Carolina's election laws in 1996 "caused discrimination against [Plaintiff's] race." *Id.* at ¶ 4. However, the pleading provides no facts to demonstrate that Plaintiff is registered to vote in state or federal elections. Because Plaintiff does not allege an infringement on her right to vote, she lacks standing to assert a claim under the Voting Rights Act. *See Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 363–64 (E.D.Va. 2009).

---

[5] A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983; therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 n. 30 (1982).

However, even if Plaintiff demonstrated standing to sue under the Voting Rights Act, she provides insufficient factual allegations to state a cognizable claim under that statute. The amended complaint claims that Plaintiff was injured "concretely" by South Carolina's 1996 change in the way state judges are elected. [Entry #10 at ¶ 4]. Plaintiff also alleges that she has presented testimony before defendant JMSC against unworthy judicial candidates to no avail. *Id.* at ¶ 5. However, Plaintiff provides no other facts to support her conclusory allegations of injury under the Voting Rights Act. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Unites States Supreme Court stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citations omitted). The court is not required to develop tangential claims from scant assertions in the complaint. *See Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985). Because Plaintiff lacks standing to sue under the Voting Rights Act, and because her bare allegations, absent further factual development, are insufficient to state a claim under that statute, the amended complaint's claims under the Voting Rights Act should be summarily dismissed.

2.    Constitutional Claims

a.    Duplicate Filing

Plaintiff has previously brought an action in this court against many of the same defendants, asserting allegations nearly identical to those presented in the amended complaint *sub judice*.[6]  *See Marie Assa'ad Faltas v. State of South Carolina, et al.*, C/A No. 3:11-3077-TLW-SVH (D.S.C. Nov. 10, 2011) (hereinafter "previous case").[7]   The court summarily dismissed Plaintiff's previous case, as explained in the Report and Recommendation issued by the undersigned on January 27, 2012, and adopted by the district judge on March 22, 2012.[8]  *Id.* at Entry #14, #20.   The amended complaint in the instant action is subject to summary dismissal for essentially the same reasons.  *See Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) ("The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient.").   Further, Plaintiff has another similar case pending before this court.

---

[6] A district court may take judicial notice of materials in the court's own files from prior proceedings.  *See United States v. Parker*, 956 F.2d 169, 171 (8th Cir. 1992) (the district court had the right to take judicial notice of a prior related proceeding); *see also Fletcher v. Bryan*, 175 F.2d 716 (4th Cir. 1949).

[7] In the instant action, John Courson is named as the new President *pro tempore* of South Carolina's Senate and LeRoy Smith is named as head of South Carolina's Department of Public Safety.  Plaintiff's previous action listed Glenn McConnell and Ken Lancaster in those positions, respectively.  The case *sub judice* lists the following additional defendants: Daniel Shearouse; Tanya Gee; V. Claire Allen; Gafford Thomas Cooper, Jr.; Daniel Johnson; Gary Watts; Roslynn Frierson; Steven Benjamin; Steve Gantt; and Dana M. Thye.

[8] Plaintiff filed a notice of appeal in the previous case on May 18, 2012.

12

*See Marie Assa'ad-Faltas v. Jean Toal, et al.*, C/A No. 3:12-2991-TLW (D.S.C. Oct. 16, 2012).[9]  Therefore, the instant action should also be summarily dismissed in the interests of judicial economy and efficiency as a duplicate filing.

  b. Request for *Qui Tam* Recovery

 As in Plaintiff's previous case, she brings the instant action on behalf of "herself and *qui tam* and *Ex Rel* the Government of the Arab Republic of Egypt." [Entry #1, caption; Entry #10, caption].[10]  While 28 U.S.C. § 1654 allows individuals to "plead and conduct their own cases personally," the statute does not extend that right to represent other parties. *See also Powers v. Ohio*, 499 U.S. 400, 410–11 (1991); *Hummer v. Dalton*, 657 F.2d 621, 625–26 (4th Cir. 1981) (plaintiff's lawsuit was confined to redress for violation of his own personal rights and he was not allowed to act as a "knight-errant" for others).  It is true that a private litigant, represented by counsel, may bring an action *qui tam* in the government's name under certain federal statutes.  For instance, the False Claims Act, 31 U.S.C. §§ 3279–3733, authorizes *qui tam* suits.  *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 (2011).  However, such suits may not be brought by a *pro se*

---

[9] Plaintiff filed the case *pro se* on October 16, 2012.  Orin Gail Briggs filed a Notice of Appearance of Counsel on Plaintiff's behalf on October 26, 2012.

[10] Upon the filing of a *qui tam* action, the United States is given sixty days to decide whether it will elect to intervene and proceed with the action.  31 U.S.C. § 3730(b).  The pleadings were served upon the United States Attorney for the District of South Carolina on August 8, 2012, and upon the Attorney General of the United States on August 15, 2012. [Entry #21, #28].  The sixty-day period for the United States to intervene expired on October 15, 2012.

complainant. *See U.S. ex rel Brooks v. Lockheed Martin Corp.*, 237 Fed. Appx. 802, 803 (4th Cir. 2007). In the instant case, Plaintiff is proceeding *pro se.* Further, while Plaintiff alludes to a misdirection of federal funds by the defendants, the amended complaint provides no allegations to support Plaintiff's conclusory allegations, or any facts to demonstrate that the defendants have caused any injury to the governments of Egypt or the United States. [Entry #10 at ¶¶ 18, 35]. Thus, Plaintiff may not proceed of behalf of the Egyptian or United States government in this case.

### c. Lack of Factual Allegations

The amended complaint names numerous defendants against whom Plaintiff provides no factual allegations. A plaintiff must affirmatively show that a defendant acted personally in the deprivation of his or her constitutional rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See Howard v. Childs*, C/A No. 3:11-3418-JFA-SVH, 2012 WL 527596 at *4 (D.S.C. Jan. 19, 2012). Although the court must liberally construe the *pro se* complaint, Plaintiff must do more than make mere conclusory statements to state a claim. *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994); *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). She must allege facts that support a claim for relief. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The amended complaint fails to indicate how the following defendants, personally, or in an official capacity, violated Plaintiff's constitutional rights: (1) Nimrata R. Haley; (2) Alan Wilson; (3) Glenn McConnell; (4) John

Courson; (5) Daniel Shearouse; (6) Tanya Gee; (7) V. Claire Allen; (8) Mark Keel; (9) LeRoy Smith; (10) Daniel Johnson; (11) Gary Watts; (12) Jeanette McBride; (13) Roslynn Frierson; (14) Steven Benjamin; (15) all members of the City of Columbia Council; (16) Steve Gantt; (17) Randy Scott; (18) Ken Gaines; (19) Robert G. Cooper; (20) Dana M. Thye; and (21) David A. Fernandez. Thus, these defendants are entitled to summary dismissal from this action.

### d. Judicial and Quasi-Judicial Immunity

Plaintiff also names several state court judges as defendants in the amended complaint: (1) Jean Toal, Chief Justice of the South Carolina Supreme Court; (2) Gafford Thomas Cooper, Jr., Administrative Judge for the Fifth Judicial Circuit; (3) Dana Turner, Chief Administrative Judge of the City of Columbia's Municipal Court; and (4) Marion Hanna, City of Columbia Municipal Court Judge. South Carolina has a unified judicial system, which includes the Supreme Court, the Court of Appeals, Courts of General Sessions, Courts of Common Pleas, Family Courts, Probate Courts, Magistrate's Courts, and Municipal Courts. *See* S.C. Const. art. V, § 1; *City of Pickens v. Schmitz*, 376 S.E.2d 271 (S.C. 1989). South Carolina judges have absolute immunity from a claim for damages arising out of their judicial actions. *See Mireles v. Waco*, 502 U.S. 9 (1991); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."). South Carolina judges are also protected from claims for injunctive relief. Section 309(c) of the Federal Courts

Improvement Act of 1996 ("FICA"), Pub. L. No 104-317, 110 Stat. 3847 (1996), amended § 1983 to bar injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff does not allege that either of these prerequisites for injunctive relief was met, therefore, any claims for injunctive relief against the judicial defendants are also subject to dismissal. *See Gilmore v. Bostic*, 636 F. Supp. 2d 496, 506 (S.D. W. Va. 2009). Based on the foregoing, it is recommended that defendants Toal, Turner, Hanna, and Gafford Thomas Cooper, Jr., be summarily dismissed.[11]

In addition, Plaintiff names the following Clerks of Court: (1) Daniel Shearouse, Clerk of South Carolina's Supreme Court; (2) Tanya Gee, Clerk of the South Carolina Court of Appeals; (3) V. Claire Allen, Deputy Clerk of the South Carolina Court of Appeals; and (4) Jeanette McBride, Richland County Clerk of Court. The "doctrine of absolute quasi judicial immunity has also been adopted and made applicable to court support personnel because of 'the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" *Abebe v. Propes*, C/A No. 0:11-1215-MBS-PJG, 2011 WL 2581385 (D.S.C. June 3, 2011), adopted, 2011 WL 2600593 (D.S.C. June 29, 2011) (quoting

---

[11] To receive declaratory relief, a plaintiff must demonstrate the absence of an adequate remedy at law. *See Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (listing requirements for declaratory relief). The amended complaint fails to demonstrate that Plaintiff has no adequate remedy in state court.

*Kincaid v. Vail*, 969 F.2d 594, 601(7th Cir. 1992)).  Therefore, to the extent Plaintiff names defendants Shearouse, Gee, Allen, and McBride for actions taken as Clerks of South Carolina state courts, such claims are likewise subject to summary dismissal based on quasi-judicial immunity.

### e.   Legislative Immunity

Plaintiff further names the South Carolina General Assembly, and members thereof, for being improperly installed or seated when it enacted Act 69 and for enacting South Carolina's "Home Rule Act."[12]  *See* S.C. Const. Art VIII, §§ 1, *et seq.*; S.C. Code Ann. §§ 4-9-30, *et seq.*; 5-7-10, *et seq.*  However, the United States Supreme Court has held that "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities."  *Bogan v. Scott-Harris*, 523 U.S. 44, 48–49 (1998); *see also Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 300–01 (4th Cir. 1995) (recognizing long tradition of granting legislators at all levels of government a broad immunity from suits based upon legitimate legislative activity).  Thus, the South Carolina General Assembly is immune from suit under § 1983 for enacting the "Home Rule Act" and Act 69.

---

[12] In South Carolina, "Home Rule" refers to the exercise of governmental functions of a local nature by the local governing body rather than by the legislative delegation, as had been the case in South Carolina in the vast majority of counties prior to the 1975 Home Rule Act.  The decision of the three-judge district court in *Woods v. Hamilton*, 473 F. Supp. 641, 644–46 (D.S.C. 1979), indicates that the United States Department of Justice pre-cleared the Home Rule Act under the Voting Rights Act on August 28, 1978.

Defendant John Courson, who is listed as President *pro tempore* of the State Senate, defendant City of Columbia Council Members, and defendant Steven Benjamin, Mayor of Columbia and a member of Columbia City Council, also enjoy legislative immunity. *See Sea Cabin on Ocean IV Homeowners Ass'n v. City of North Myrtle Beach*, 828 F. Supp. 1241, 1242 n. 1 (D.S.C. 1993) (holding that a mayor, sued in his official capacity, enjoys absolute legislative immunity from suit under § 1983). In addition, members of the JMSC have derivative legislative immunity because they are performing a legislatively-delegated function. *Segars-Andrews v. Judicial Merit Selection Comm'n*, 691 S.E.2d 453, 464 (2010) ("The South Carolina Constitution expressly vests in the JMSC the sole determination of a judicial candidate's qualifications, and the General Assembly is constitutionally charged with the election and reelection of judges found qualified by the JMSC."). Therefore, defendants South Carolina General Assembly, John Courson, JMSC, Steven Benjamin, and City of Columbia Council Members should be summarily dismissed from this case.

     f.     Eleventh Amendment

The Eleventh Amendment bars suits by citizens against non-consenting states brought either in state or federal court. *See Alden v. Maine*, 527 U.S. 706, 712–13 (1999); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment's protection extends to arms of the state, including state agencies and instrumentalities, and to any state official or

employee sued in an official capacity.[13]  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (suit against a state official in his or her official capacity is no different than a suit against the state itself); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding that "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").  The Eleventh Amendment also generally bars this court from granting injunctive relief against a state or its agencies.[14]  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) (finding that "the relief sought by plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment"); *Alabama v. Pugh*, 438 U. S. 781 (1978); *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 766 (2002) ("Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability.  Rather, it provides an immunity from suit.").  Therefore, the State of South Carolina and the following South Carolina agencies, departments, employees, and officials, all sued solely in their

---

[13] Congress has not abrogated the states' sovereign immunity under § 1983.  *See Quern v. Jordan*, 440 U. S. 332, 343 (1979).  Further, South Carolina has not consented to suit in federal district court.  *See* S.C. Code Ann. § 15-78-20(e).

[14] An exception to Eleventh Amendment immunity was announced in *Ex parte Young*, 209 U.S. 123 (1908), "which permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).  A violation is considered ongoing "when a state officer's enforcement of an allegedly unconstitutional state law is threatened." *Id.* (citation omitted). The amended complaint's speculative and conclusory allegations are insufficient to bring Plaintiff's claims within the *Ex parte Young* exception to Eleventh Amendment immunity. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (specificity is necessary so that state officials are not required to file unnecessary responses to speculative allegations).

official capacity, are protected by Eleventh Amendment immunity and are entitled to summary dismissal from this case: (1) Nimrata R. Haley, Governor; (2) Alan Wilson, S.C. Attorney General; (3) Glenn McConnell, Lieutenant Governor; (4) the JMSC; (5) Mark Keel, Chief of SLED; (6) LeRoy Smith, Head of S.C. Department of Public Safety; (7) Leon Lott, Sheriff of Richland County; (8) Gary Watts, Coroner for Richland County; and (9) Roslynn Frierson, Director of S.C. Office of Court Administration.[15]

g.      Prosecutorial Immunity/"Not a Person" Under § 1983

Plaintiff further names several attorneys in this case to include: (1) Daniel Johnson, Solicitor for the Fifth Judicial Circuit; (2) Leslie Coggiola, Disciplinary Counsel for South Carolina; (3) William Nettles, United States Attorney for the District of South Carolina; and (4) City of Columbia attorneys Ken Gaines, Robert G. Cooper, Dana M. Thye, and David A. Fernandez.  To the extent Plaintiff names these attorneys in their capacity as prosecuting attorneys for the State or Federal Governments, they are entitled to summary dismissal because prosecutors have absolute immunity for activities in or connected with judicial proceedings, such as a criminal trial, bond hearings, bail hearings, grand jury proceedings, and pre-trial motions hearings.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 272–73 (1993); *Burns v. Reed*, 500 U.S. 478 (1991); *Dababnah v. Keller-Burnside*, 208 F.3d 467 (4th Cir. 2000). Courts that have considered the issue in reported cases have also extended

---

[15] The Supreme Court has held that the *qui tam* statute does not abrogate a State's Eleventh Amendment immunity.  *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787–88 (2000).

prosecutorial immunity to prosecutorial disciplinary counsel, such as defendant Coggiola. *See Stein v. Disciplinary Bd.*, 520 F.3d 1183, 1193 (10th Cir. 2008) (absolute prosecutorial immunity extends to bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline) (citing *Clulow v. State of Oklahoma*, 700 F.2d 1291, 1298 (10th Cir. 1983)); *Hirsh v. Justices of the Supreme Court of the State of California*, 67 F.3d 708, 715 (9th Cir. 1995) (granting bar counsel absolute quasi-judicial immunity for their role in attorney disciplinary system); *see also Hekyong Pak v. Ridgell*, C/A No. RDB-10-01421, 2011 WL 3320197 at *7 (D. Md. Aug. 1, 2011) ("In light of the persuasive authority in other Circuits, analogous cases in the Fourth Circuit, and the Supreme Court's jurisprudence regarding prosecutorial immunity, this Court finds that bar counsel prosecutors are afforded absolute immunity for conduct performed in a judicial capacity.").

In addition, an attorney, whether retained, court-appointed, or a public defender, does not act under color of state law when performing traditional functions as counsel. *See Polk County v. Dodson*, 454 U.S. 312, 317–24 & nn. 8–16 (1981) (public defender); *Hall v. Quillen*, 631 F.2d 1154, 1155–56 & nn. 2–3 (4th Cir. 1980) (court-appointed attorney); *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) (private attorney). While it does not appear that any of the attorneys named in this case acted as defense counsel for Plaintiff, to the extent the attorneys in this case are named for performing traditional functions as counsel, they are not considered "persons" amenable to suit under § 1983. Further, Plaintiff's claims against defendant Nettles for allegedly threatening Plaintiff with arrest and for yelling at Plaintiff

[Entry #10 at ¶ 37] are subject to summary dismissal in any event because the use of abusive language, alone, is not a basis for a civil rights action. *See Henslee v. Lewis*, No. 05-6768, 2005 WL 2888220 at *1 (4th Cir. Nov. 3, 2005); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C.), *aff'd*, 917 F.2d 1302 (4th Cir. 1990). Therefore, defendants Johnson, Coggiola, Nettles, Gaines, Robert G. Cooper, Thye and Fernandez should be summarily dismissed form this case.

h.    Mandamus Relief

Finally, it is noted that much of the relief sought by Plaintiff cannot be granted by this court. Plaintiff asks the court to compel various actions by the State of South Carolina and its officials. Under 28 U.S.C. § 1361, district courts are granted "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Thus, on its face, § 1361 extends federal mandamus jurisdiction only to federal officers or employees. *See United States v. Oncology Assocs.*, 198 F.3d 502, 510 (4th Cir. 1999). Should Plaintiff look to 28 U.S.C. § 1651, the "all writs statute," as a source of mandamus authority, relief would still be unavailable. A writ of mandamus is limited to cases where federal courts are acting in aid of their respective jurisdictions. *See* 28 U.S.C. § 1651; *Gurley v. Super. Ct. of Mecklenburg Cnty.*, 411 F.2d 586, 587–88 & nn. 2–4 (4th Cir. 1969). Because Plaintiff seeks mandamus relief against the State of South Carolina and/or its governmental officials, this court lacks jurisdiction under §§ 1361 and/or 1651 to grant such relief.

III.     Conclusion

For the foregoing reasons, it is recommended that this case be dismissed without prejudice and without issuance and service of process.  It is further recommended that Plaintiff's motion to designate a three-judge panel from outside South Carolina [Entry #14] be denied.

IT IS SO RECOMMENDED.

November 14, 2012
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).